# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 0336 | **DATE** | March 1, 2004 |
| **CASE TITLE** | *SEC v. Hollinger International* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum and Order, Hollinger Inc.'s Motion to Intervene [9-1] is GRANTED and Motion to Vacate [12-1] is GRANTED in part. The Court will only vacate the portions of Section IV that affect the exercise of Inc.'s voting rights to elect or remove directors. To ensure the status quo (e.g., preventing Inc. from changing the composition International's board of directors), however, the Court will stay the entry of this order until the parties have had an opportunity to fully brief and be heard on whether the facts warrant the impediments imposed on Inc.'s voting rights by the Judgment.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | MAR 0 2 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | U.S. DISTRICT COURT | | |
| | Mail AO 450 form. | CLERK | docketing deputy initials | 30 |
| | Copy to judge/magistrate judge. | FEB 30 PM 3:52 | | |
| RTS | courtroom deputy's initials | FILED 03-0714 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | Hon. Blanche M. Manning |
| v. | ) ) ) | Case No. 04 C 0336 |
| HOLLINGER INTERNATIONAL, INC. | ) ) ) | |
| Defendant. | ) | |

**DOCKETED**

**MAR 0 2 2004**

## MEMORANDUM AND ORDER

Plaintiff Securities and Exchange Commission ("the SEC") brought the instant enforcement action for injunctive and other equitable relief against Hollinger International, Inc. ("International"), alleging violations of federal securities laws. On the same day it filed this action, the SEC brought an emergency motion seeking entry of a partial final judgment, which was entered that day. Hollinger, Inc. ("Inc."), the majority shareholder of International, now moves to intervene and to vacate the partial judgment. For the reasons set forth below, these motions are GRANTED.

## BACKGROUND[1]

This action arose from a corporate dispute between a parent (Inc.) and its subsidiary (International). International, a publicly traded corporation incorporated in Delaware, is one of the larger newspaper publishers in the world, whose publications include the Chicago Sun-Times, the Jerusalem Post, and the London Daily Telegraph. Although a publicly traded

---

[1] The facts in the Background section are derived from the SEC's complaint and the parties' submissions and attachments thereto.

30

company, International is controlled by Inc. which owns 30% of its equity and 72% of its voting rights. The SEC alleges that from 1999 until at least 2001, International made unauthorized transfers of at least $32 million to corporate insiders and related entities, including Inc. In an attempt to hide these transactions, International allegedly made false statements and failed to disclose material information in violation of the Securities Exchange Act of 1934 and SEC rules.

In response to complaints by shareholders, International's board of directors established a special committee of independent directors ("the Special Committee") to investigate and recover these unauthorized transfers. The Special Committee's investigation appeared to be successful in that International admitted $32.15 million in unauthorized payments to Inc., Conrad Black, the former CEO of International and owner of a controlling interest in Inc., and David Radler, International's former president and COO and current COO of Inc. In a November 2003 agreement, Inc. and Black agreed to a repayment plan. Before the first repayment, which was due on January 18, 2004, however, the SEC alleges that Black began to make public statements indicating that he had done nothing wrong and might not be obligated to repay the alleged unauthorized transfers.

On January 16, 2004, two days before the first repayment was scheduled, the SEC brought the instant action against International, alleging violations of the securities laws and seeking injunctive and other equitable relief. On the same day that it filed this action, the SEC brought an Emergency Motion for Entry of Settled Partial Judgment and Order ("Emergency Motion"), before Judge Gettleman, the emergency judge presiding at that time. The Emergency Motion stated that "there have been growing indications that some of the very same [International] corporate insiders and related entities who improperly received corporate assets

are attempting to thwart and obstruct the efforts of the Special Committee." Attached to the emergency motion was a document styled "Consent of Defendant Hollinger International, Inc.," in which International consented to the entry of a partial final judgment and waived its right to appeal.

Relying solely on the SEC's written submissions and presumably without being advised of the potential effect on Inc.'s interests, Judge Gettleman, entered the Partial Final Judgment and Order of Permanent Injunction and Other Equitable Relief ("the Judgment"), which was attached to the Emergency Motion.[2] Ten days after the entry of the Judgment, Inc. brought the instant motions to intervene and to vacate the Judgment, which are currently before the Court.

## ANALYSIS

### I. Motion to Intervene

The SEC and International contend that Inc. should not be permitted to intervene because: (A) section 21(g) of the Securities Exchange Act of 1934 (15 U.S.C. § 78u(g)) bars intervention in enforcement actions brought by the SEC; and (B) it has failed to meet the requirements of Federal Rule of Civil Procedure 24. The Court will address each of these contentions in turn.

#### A. Section 21(g) and Intervention in an SEC Enforcement Action

Section 21(g) states that:

[n]ot withstanding the provisions of section 1407(a) of Title 28, or any other provision of law, no action for equitable relief instituted by the [SEC] pursuant to the securities laws

---

[2] The portion of the Judgment at issue is the section which states that if Inc. votes to remove any of International's current directors or fails to reelect any director, a "Special Monitor" would automatically be appointed to oversee International's activities, at a cost of at least $750,000, with a mandate to "protect the interests of the non-controlling shareholders." (Judgment, section IV.)

3

>    shall be <u>consolidated or coordinated</u> with other actions not brought by the [SEC], even though such other actions may involve common questions of fact, unless such consolidation is consented to by the [SEC].

15 U.S.C. § 78u(g) (emphasis added). The SEC and International contend that the above language precludes Inc. from intervening. In response, Inc. asserts that because section 21(g) does not specifically mention intervention, it is not precluded. Both sides' positions are supported by case law. Before discussing these cases, however, the Court will analyze section 21(g) under the rules of statutory construction.

When construing a statute, courts should look first at its language, which if clear and unambiguous ends the analysis. <u>Hughes Aircraft Co. v. Jacobson</u>, 525 U.S. 432, 438 (1998). Where a statute "is clear and without ambiguity, and where the legislative history so clearly indicates the intention of Congress, [courts are] not permitted to read into the act words which Congress has omitted." <u>United States v. Smoler Bros.</u>, 187 F.2d 29, 32 (7th Cir. 1951). <u>See also</u> <u>Sale v. Haitian Ctrs. Council, Inc.</u>, 509 U.S. 155, 168-69 n.16 (1993) (court should not add terms or provisions to a statute where Congress has omitted them).

Here, because section 21(g) does not specifically prohibit "intervention," the Court will examine the legislative history to determine if Congress intended to do so. Congress enacted section 21(g) to limit private plaintiffs from filing their own actions, "the allegations of which closely follow those of the [SEC's] action." S. Rep. No. 94-74, at 74 (1975), 1975 U.S.C.C.A.N. 179, 252. The drafters were concerned that by "merely rid[ing] along on the Government's case," the private actions would delay the enforcement action by "greatly increasing the need for extensive pretrial discovery," particularly with regard to damages which are not generally required in an enforcement action for injunctive relief. <u>Id.</u> at 76. The Senate also noted that the

4

private plaintiffs' objective in filing suit was to receive damages and to adjudicate private disputes "between citizens," which is "very different" than the objective of an SEC enforcement action – to fulfill the legislature's "mandated scheme of law enforcement in the securities area." Id.

Here, none of the concerns cited by Congress above apply to this case. Inc. is not attempting to intervene to assert its own private action against International. Instead, as explained below, Inc., as the majority shareholder of International, is simply attempting to protect its corporate voting rights, which could be affected by the entry of the Judgment. Indeed, at the February 26, 2004, hearing on this motion, counsel for Inc. stated that Inc.'s only objective in moving to intervene was to protects its rights as the majority shareholder. Likewise, the Motion to Vacate seeks only to vacate those sections of the Judgment that affect Inc.'s voting rights, not the sections which preclude International from violating securities law. Moreover, Inc. has not filed a separate suit, but instead has filed an answer to the SEC's complaint asserting affirmative defenses. Therefore, because intervention is not specifically precluded by section 21(g) and the concerns cited by Congress are not implicated, this Court finds that, for the purposes of this case, section 21(g) does not preclude Inc. from attempting to intervene under Rule 24.[3]

This decision is supported by a number of cases, including the only circuit court to have ruled on the issue. In SEC v. Flight Transpotation Corp., 699 F.2d 943, 950 (8th Cir. 1983), in reversing the lower court's denial of a motion to intervene, the court held that a creditor with an

---

[3] The Court notes that although intervention will delay the final disposition of this case, "a prolonged claim resolution process does not justify the application of section 21(g), where, in the Court's view, the provision was not intended to apply." SEC v. Prudential Sec. Inc., 171 F.R.D. 1, 5 (D.D.C. 1997).

unliquidated claim in the company charged in an SEC enforcement action could intervene. In making this decision, the Eighth Circuit noted that section 21(g) "does not say that no one may intervene in action by the SEC . . . . [indeed] [i]t does not [even] mention [Rule] 24, nor does Rule 24 contain any clause giving special privileges to the SEC." Id. Instead, the court found that "the purpose of this subsection is simply to exempt the [SEC] from the compulsory consolidation and coordination provisions applicable to multidistrict litigation." Id.

A number of district courts, including at least one in this district, have followed the reasoning of the Eighth Circuit and found that section 21(g) does not automatically preclude a non-party from intervening in an enforcement action. See SEC v. Heartland Group, Inc., 2003 WL 1089366, at *3 (N.D. Ill. Mar. 11, 2003); SEC v. Credit Bancorp, Ltd., 194 F.R.D. 457, 465-66 (S.D.N.Y. 2000); SEC v. Prudential Sec. Inc., 171 F.R.D. 1, 4-5 (D.D.C. 1997). However, at least two courts in this district have held that section 21(g) operates as "an impenetrable wall" with regard to intervention. SEC v. Wozniak, 1993 WL 34702, at *1 (N.D. Ill. Feb. 8, 1993); SEC v. Homa, 2000 WL 1468726, at *2 (N.D. Ill. Sept. 29, 2000).

In SEC v. Heartland Group, Inc., 2003 WL 1089366, at *3, in finding that section 21(g) did not automatically preclude intervention, the court distinguished Wozniak and Homa. The court found that in those cases, both "would-be intervenors attempted to recover from the very defendants the SEC was suing." Id. In Heartland, however, the intervenor did not seek to sue the defendant in the enforcement action, but, instead, sought to protect its interest in property which was subject to the enforcement action. Id.

Here, as in Heartland and Flight Transportation Corp., as discussed above, Inc. is not attempting to recover damages from International, but is only attempting to protect its interests,

6

as majority shareholder – namely its corporate voting rights – which are affected by the Judgment. Therefore, this Court finds Wozniak and Homa distinguishable and holds that section 21(g) is not an absolute bar to intervention in this action by Inc.

### B. Intervention Under Rule 24

Having determined that section 21(g) does not preclude Inc. from moving to intervene, the Court will next examine whether Inc. is entitled to intervene as of right, pursuant to Federal Rule of Civil Procedure 24(a).[4]

To intervene as a matter of right, the proposed litigant is required to show: (1) an interest relating to the subject of the action; (2) the disposition of the matter would likely impair or impede its ability to protect its interests; (3) the existing parties to the suit would not adequately represent its interests; and (4) the motion is timely.[5] Sokaogan Chippewa Community v. Babbitt, 214 F.3d 941, 945-6 (7th Cir. 2000). Here, the SEC and International contend that Inc. has failed to show that it has a legitimate interest which would be impaired or that the existing parties would not adequately protect its interests.

Although "the "interest required by Rule 24(a)(2) has never been defined with particular precision," the would-be intervener's interest must be a "direct, significant, legally protectable one. . . . something more than a mere 'betting' interest, but less than a property right. . . ." Security Ins. Co. of Hartford v. Schipporeit, Inc., 69 F.3d 1377, 1380-81 (7th Cir. 1995).

---

[4] Because this Court finds that intervention is proper under Rule 24(a), it will not address Inc.'s assertion that it may permissively intervene under Rule 24(b).

[5] When analyzing an intervention motion, courts should "construe Rule 24(a) liberally," Miami Tribe of Oklahoma v. Walden, 206 F.R.D. 238, 241 (S.D. Ill. 2001), and "must accept as true the non-conclusory allegations of the motion," Reich v. ABC/York-Estes Corp., 64 F.3d 316, 321 (7th Cir. 1995), "resolving doubts in favor of intervention." Walden, 206 F.R.D. at 241.

7

In determining the alleged interest, the proposed intervenor need only claim an interest relating to the suit; the fact that its claim ultimately fails does not affect its status as an intervenor. American Nat. Bank and Trust Co. v. Bailey, 750 F.2d 577, 585 (7th Cir. 1984). Moreover, because the interest to warrant intervention as of right is a "highly fact specific determination, making comparison to other cases [is] of limited value." Security, 69 F.3d at 1381.

In examining whether the proposed litigant's interest is impaired, the court need only determine whether the "purported interest could be decreased in value by a decision" in the action. FTC v. Med Resorts Int'l, Inc., 199 F.R.D. 601, 606 (N.D. Ill. 2001) (emphasis added). See also Shea v. Angulo, 19 F.3d 343, 347 (7th Cir. 1994) ("impairment exists when the decision of a legal question . . . would, as a practical matter, foreclose the rights of the proposed intervenor in a subsequent proceeding").

Here, Inc., the majority shareholder of International with 72% of the voting shares and 30% of the equity, contends that the Judgment impairs its ability to exercise control over International in accordance with Delaware law and International's certificate of incorporation. Specifically, Inc. asserts that its right to remove and elect corporate directors is adversely affected by the Judgment. In response, the SEC and International contend that the Judgment does not prevent Inc. from exercising its right to vote. Before examining these contentions, the Court must first look to Delaware corporate law.[6]

Under Delaware law, stockholders have a "fundamental right" to "vote on specific matters, in particular, [the] election of directors." MM Co., Inc. v. Liquid Audio, Inc., 813 A.2d 1118, 1126 (Del. 2003). Anything which impedes the stockholders' right to elect directors

---

[6] International is incorporated in Delaware, and therefore, Delaware corporate law governs Inc.'s rights as a shareholder.

violates the "fundamental principles of corporate governance" – the allocation of power between the corporate owners, the stockholders, and the directors, who control the corporation. Id. at 1126-27. Accordingly, the Delaware Supreme Court looks very unfavorably upon any device "designed to interfere with or impede the effective exercise of corporate democracy by shareholders, especially, in an election of directors." Id. at 1127. See also Nycal Corp. v. Angelicchio, 1993 WL 401874, at *3 (Del. Ch. Aug. 31, 1993) (Delaware corporate statute "guarantees the right of a majority of shareholders to remove directors with or without cause").[7] Accordingly, under Delaware law and International's corporate by-laws, Inc., as the majority shareholder, has the unfettered right to remove and elect directors.

The issue before this Court thus is whether the Judgment could "impede" Inc.'s "fundamental right" to vote to elect or remove International's directors. Under the Judgment, if Inc. votes to remove or fails to reelect any current director, a "Special Monitor" would automatically be appointed to oversee International's activities, at a cost of at least $750,000, with a mandate to "protect the interests of the non-controlling shareholders." (Judgment, section IV.) The Special Monitor would then have the power to come into this Court to report and contest any actions which the Special Monitor believes are not in the best interests of the minority shareholders. According to Inc., the appointment of the Special Monitor would result in "chaos" in the management of Inc. For example, routine corporate actions such as declaring dividends and the purchase or sale of assets would not be able to be made without this Court first examining the surrounding circumstances.

---

[7] In addition to Delaware law, section 2.3 of International's corporate by-laws expressly permits Inc. to vote for the election and removal of International's directors.

After reviewing Delaware law and the current factual record, this Court agrees with the SEC and International that Inc. could still exercise its voting rights. This, however, is not the issue. The issue is whether the Judgment could "impede" Inc.'s "fundamental right" to vote to elect or remove International's directors. After careful consideration, this Court finds that although Inc. could still vote with the Judgment in place, its unfettered and fundamental right to do so, under Delaware law, could be impeded by the Judgment. Thus, this Court finds that Inc. has shown an interest which could be impaired by the Judgment.[8]

As for adequacy of representation, the required showing is "minimal." Med Resorts Int'l, Inc., 199 F.R.D. at 606. "[T]he movant need only show that the representation of his interests may be inadequate." Id. (emphasis added) (citing Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.1 (1972)). See also Miami Tribe of Oklahoma v. Walden, 206 F.R.D. 238, 243 (S.D. Ill. 2001).

Here, based on the parties' submissions, statements in court, and the on-going litigation in Delaware, the Court finds that Inc.'s interests may not be adequately represented by the SEC and International. For example, the SEC sought entry of the Judgment, which, as explained above, could affect Inc.'s voting rights, without giving Inc. any notice whatsoever. Moreover, the directors and management of International are currently involved in litigation in Delaware state court against the management of Inc. Thus, Inc. has shown that the SEC and International may not adequately represent Inc.'s interests in this action.

---

[8] The Court notes that although Inc. has shown its voting rights, as protected under Delaware law, could be impaired, the Court, at this time, does not make a finding that the Judgment is in contravention of Delaware Corporate law. It is entirely possible that the Judgment could be properly entered based on the conduct of Inc. and other related parties. At this time, however, the Court does not believe that the SEC or International have put forth sufficient evidence to warrant such a drastic measure.

Accordingly, this Court finds that Inc. may intervene as of right under Rule 24(a) because it has shown that it has a legitimate interest which could be impaired and that the existing parties may not adequately protect this interest.[9]

## II. Motion to Vacate

Next, because this Court finds that Inc. may properly intervene, the Court will examine the Motion to Vacate the Judgment. First, however, the Court will briefly review the standard of review for amending a judgment under Rule 59(e).[10]

While Rule 59(e) permits a litigant to alter or amend a judgment, it does not permit a party to rehash previously raised arguments. Lewis v. Herman, 783 F. Supp. 1131, 1132 (N.D. Ill.1991). The grounds for amending a judgment under Rule 59(e) "are newly discovered evidence, an intervening change in the controlling law, and manifest error of law or fact." Cosgrove v. Bartolotta, 150 F.3d 729, 732 (7th Cir.1998). A number of courts have also held that a judgment may be altered to prevent a "manifest injustice." See C.H. Robinson Worldwide, Inc. v. Nat'l Prod. Corp., 2002 WL 99735, at *1 (N.D. Ill. Jan. 25, 2002); Bollig v. Christian Community Homes and Servs., Inc., 2003 WL 23211142, at *2-3 (W.D. Wis. Oct. 27, 2003); Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Whether to grant a Rule 59 motion "is entrusted to the sound judgment of the district court." Matter of Prince, 85 F.3d 314, 324 (7th Cir. 1996).

Here, after reviewing the law and the facts surrounding the entry of the Judgment, this

---

[9] The SEC and International have not contested the timeliness of the Motion to Intervene, and based on the current record, this Court finds the motion is timely, as it was filed 10 days after entry of the Judgment.

[10] Inc. also moved to vacate the Judgment under Rule 60(b)(3) and (6). Because this Court finds that the motion has merit under Rule 59(e), it will not discuss Rule 60.

Court finds that: (1) Inc. should have been given notice and an opportunity to object to the Judgment before it was entered by Judge Gettleman; and (2) it appears, based on the parties' representations to this Court and what took place before Judge Gettleman, that the SEC and International failed to present a complete factual picture to Judge Gettleman, which in turn, prevented him from properly assessing whether the Judgment was fair, reasonable, or if, and to what extent, it affected the rights of Inc.

When the parties to a dispute agree to the entry of a consent order, which may require continuing supervision or impose costs on non-parties, the court "must not rubberstamp the proposed consent order but must review it carefully to make sure that it does not create undue [] burdens." Blankenship v. N.L.R.B., 54 F.3d 447, 449 (7th Cir. 1995). See also N.L.R.B. v. Brooke Indus., Inc., 867 F.2d 434, 435 (7th Cir. 1989) (courts should reject consent judgments which affect the rights of third parties). Additionally, in determining whether to enter a proposed consent order, the court should determine whether it is lawful, fair, reasonable, and adequate. E.E.O.C. v. Hiram Walker & Sons, Inc., 768 F.2d 884, 889 (7th Cir. 1985).[11] Moreover, anytime the government brings an action which may deprive a party of a property right, the party, whose interests are affected, must receive notice and be afforded an opportunity to protect its rights. United States v. James Daniel Good Real Prop., 510 U.S. 43, 48-49 (1993).

Here, the SEC and International do not contest a non-party's right to notice, where that party has a right adversely affected by the entry of a consent order. Instead, they contend that Inc. did not have a right to notice or to object to the Judgment because it does not have a legally viable interest affected by the Judgment. As explained in detail above, however, this Court finds

---

[11] In SEC v. Woldcom, Inc., 273 F. Supp. 2d 431, (S.D.N.Y. 2003), the court applied many of the above factors to a settlement agreement in a securities action brought by the SEC.

12

that the Judgment could impair Inc.'s unfettered right under Delaware law to remove and elect members of International's board of directors.

Despite knowing that Inc.'s voting rights could be impeded by the Judgment, the SEC failed to give any notice to Inc. of the Emergency Motion. Instead, on the same day that it filed this action, the SEC brought the Emergency Motion to the emergency judge – Judge Gettleman. Moreover, neither the Emergency Motion nor the Judgment even mentioned Inc., let alone gave any hint that the entry of the Judgment could have a negative impact on Inc.'s voting rights. Without knowing of the potential harm to Inc.'s interest, Judge Gettleman, relying solely on the SEC's written submissions and the fact that the named parties had consented, entered the Judgment.

Accordingly, because Inc. had a legitimate interest at stake, this Court finds that the SEC should have given Inc. notice and alerted Judge Gettleman to the possible adverse affect the Judgment could have on Inc. Because the SEC failed to take the above actions, Judge Gettleman did not have a complete and accurate view of the facts surrounding the entry of the Judgment, and therefore, this Court finds that the Judgment should be partially vacated.

The Court, however, will only vacate the portions of Section IV that affect the exercise of Inc.'s voting rights to elect or remove directors. To ensure the status quo (e.g., preventing Inc. from changing the composition International's board of directors), however, the Court will stay the entry of this order until the parties have had an opportunity to fully brief and be heard on whether the facts warrant the impediments imposed on Inc.'s voting rights by the Judgment.[12]

---

[12] At the hearing on this motion, the SEC alleged that without the Judgment, Inc. would have altered the composition of the board of directors and disbanded the Special Committee. Although no evidence was presented to prove these allegations, the Court feels that these allegations appear possible based on what transpired in the Delaware action between Inc. and

13

Although Inc. has shown its voting rights, as protected under Delaware law, could be impaired, the Court, at this time, does not make a finding that the Judgment is in contravention of Delaware Corporate law or that the Judgment not could be entered as currently worded. Instead, this Court simply finds that Inc. should have been given notice and an opportunity to be heard before entry of the Judgment. In moving for the Judgment, the SEC asserted that the "triggering events" to appoint the Special Monitor were needed because "there have been growing indications that some of the very same [International] corporate insiders and related entities who improperly received corporate assets are attempting to thwart and obstruct the efforts of the Special Committee." Based on the current record, the Court cannot, at this time, determine whether this statement is true, and if it is true, whether this Court could enter an order limiting Inc.'s right to vote under Delaware law.[13]

---

International.

[13] On February 26, 2004, after the hearing on this matter, the court in the Delaware action (Hollinger International, Inc. v. Black, 2004 WL 360877 (Del. Ch.), issued an opinion. While the court did state that the Judgment was not at issue, id. at *23 n.63, it did find that the terms of the Judgment did not prohibit Inc. from exercising its right to vote. Id. at *55-56. Although the Court has ruled, the parties are free to address if, and to what extent, the recent Delaware decision has on this action.

14

## CONCLUSION

For the reasons discussed, Hollinger Inc.'s Motion to Intervene [9-1] is GRANTED and Motion to Vacate [12-1] is GRANTED in part. It is so ordered.

ENTER:

*Blanche M. Manning*
**BLANCHE M. MANNING**
**U.S. DISTRICT COURT JUDGE**

DATE: 3/1/04